**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **Case No: 1:12-CR-0017-001** |
| | ) | |
| **SANJAY GUPTA,** | ) | **Judge Amy Berman Jackson** |
| | ) | |
| **Defendant.** | ) | **Sentencing: September 28, 2012** |

---

<u>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**</u>

The defendant, Sanjay Gupta, entered a pre-indictment guilty plea to a one-count felony information charging him with interstate transportation of stolen securities, in violation of 18 U.S.C. § 2314. At the time of the offense conduct, Mr. Gupta was working as at Air India as an administrative assistant. As a result of the instant offense, he lost his 15-year career, his source of income, and his reputation. For the first time in his life, he will be sentenced for a crime. His regret for the situation and dishonor that he has brought upon himself and his family is immeasurable. To his credit, Mr. Gupta took immediate responsibility for his actions and made full restitution in the amount of $536,074.13 on the date of the plea hearing before the Court. Through counsel, Mr. Gupta now respectfully submits this memorandum as an aid to the Court's sentencing decision.

In the post-*Booker* era, the sentencing court's duty is to consider all the factors identified in 18 U.S.C. § 3553(a) and "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in the statute. *See* 18 U.S.C. § 3553(a). The applicable range under the advisory Sentencing Guidelines is one factor that the Court must consider when imposing sentence, but the Court "may not presume that the Guidelines range is

reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007).  In this case, the defense agrees with the Presentence Investigation Report (PIR) that the applicable advisory Guidelines range is 37 to 46 months' imprisonment.  For the reasons discussed below, Mr. Gupta submits that a lesser sentence of one year of home incarceration will fully serve the purposes of federal sentencing when one considers Mr. Gupta's early and exceptional acceptance of responsibility, the history and personal characteristics of Mr. Gupta, including his own serious health concerns and those of his son, and Mr. Gupta's payment of restitution in full on the date of the plea hearing.

**I.      The Advisory Sentencing Guidelines Range**

Mr. Gupta does not dispute that his advisory Guidelines range is, as the PIR reflects, 24 to 30 months.  Based on the plea agreement, the PSR and the government's sentencing memorandum, Mr. Gupta believes that the applicable advisory Guidelines range will be undisputed at sentencing.

**II.     The Other § 3553 Factors**

Section 3553 requires a sentencing court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the four purposes of federal sentencing.  18 U.S.C. § 3553(a).  Those four purposes are the need for the sentence imposed to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In addition, section 3553 requires district courts to consider the following factors (in addition to the advisory Guidelines range and any pertinent policy statements issued by the Sentencing Commission) in imposing sentence:   (1) the nature and circumstances of the offense and the history and

characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s).  18 U.S.C. § 3553(a)(1)-(7).  For the reasons that follow, Mr. Gupta submits that a downward variance from the advisory Sentencing Guidelines range is warranted in this case.

A.      *The Nature and Circumstances of Mr. Gupta's Offense*

Mr. Gupta accepts the statement of his offense conduct contained in the PIR.  PIR ¶¶ 12-19 and the statement of facts in the plea agreement.  As that description reflects, Mr. Gupta's opened a bank account in 2007 in the name of Air India and began diverting funds into the account.  The conduct ceased in March of 2010.  Mr. Gupta improperly received $536,074.13 in that time period.

To his credit, Mr. Gupta resigned from Air India and accepted responsibility for his actions by pleading guilty before the Court at the earliest opportunity.   Significantly, he also made restitution in full on the plea date.

Mr. Gupta's conduct was wrong, and he offers no justification for it.  In assessing the appropriate sentence, however, he asks the Court to consider that he has never before engaged in criminal conduct in his life and will never do so again.   His conduct has cost him his career and has devastated his family.  Mr. Gupta has been unable to find work for the two and a half years since he left Air India.   His actions have taken a direct financial toll on his family and Mr. Gupta blames himself for the fact that his daughter could not enroll in the university of her choice.  The stress and anxiety associated with these events have taken a huge toll on his physical health in the past two years.  As the Court is aware, Mr. Gupta suffered a stroke earlier this year and the anxiety has exacerbated a number of his health issues.

Mr. Gupta has always been a significant provider for his family and has taken great pride in providing his family a better life in the United States.  He had been financially supporting his wife, his disabled son and his teenage daughter.   Mr. Gupta's offense was a serious lapse in judgment that he will regret for the rest of his life.   His prompt plea and payment of full restitution illustrate that he has done all within his power to atone for it.  The conduct does not define who he is, but as a convicted felon, he will certainly have a large blemish on his record that will make it very difficult for him to find gainful employment in the future.

     B.    *The History and Characteristics of Mr. Gupta*

Section 3553(a) "requires court to take into account relevant facts to a defendant's history and characteristics," such as defendants lack of criminal history, age, efforts at rehabilitation and efforts to cooperate with the government.  *United States v. Delaney*,  651 F.3d 15, 20 (D.C. Cir. 2011)(*internal citations omitted*).  In addition, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," *id.*    18 U.S.C. § 3661;  *see United States v. Anderson,* 632 F.3d 1264, 1270 (D.C.Cir.2011) (citing 18 U.S.C. § 3661; *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)).

We respectfully submit that consideration of the aforementioned factors support a substantial downward variance from the applicable Sentencing Guidelines range.  The fact that Mr. Gupta accepted an early pre-indictment plea for his conduct and has repaid the money he improperly took reflects a greater truth about this defendant: Mr. Gupta's actual character is that of a law-abiding, responsible, and hard-working citizen.  He knows he acted improperly, and he has taken every step available to him to make amends swiftly.  Based on Mr. Gupta's lack of a

criminal history, and his overall character, we respectfully ask the Court to conclude that he is truly remorseful and that Mr. Gupta's history and characteristics weigh in favor of leniency.

No one can attest more to Mr. Gupta's history and characteristics more than the people that know him the best and have known him the longest.  The theme in the letters submitted to the Court make clear that Sanjay Gupta is a hard working man who is dedicated to his family and helping others.   His friends and family know that he deeply regrets his actions and will never repeat them.   Indeed, the letters describe how Mr. Gupta selflessly moved his family to the United States to help hearing impaired son.  *See Letters Attached as Exhibit* 1.

Ajay Gupta, Sanjay's younger brother, once appointed as the National Golf Coach of India and that of the United Arab Emirates, points out that Sanjay left a comfortable life in India to benefit his then infant hearing impaired son by moving to America.

"Sanjay's son Vaibhav was born in India with a permanent hearing impairment that would have negatively affected Vaibhav's future, as the required resources were not available in India…Sanjay decided to leave the comfort and security of the family home and business in India…and move to the United States…to give his son the best possible opportunity to succeed in life…but due to his disability he is still dependant on his father for his daily needs and living."

Ajay also points out that Sanjay is always one to help others including serving as a "guarantor and counter signatory for student loans for a friend's child studying in the USA and thus potentially exposing himself to financial liabilities in case of default by the original loan applicant."

Anjeli Vaid, younger sister to Sanjay, who volunteers for the homeless street children of New Delhi, is also a founding member of an rehabilitation organization for homeless animals, grew up looking up to and depending on Sanjay, demonstrating himself to be a "reliable,

trustworthy, responsible, strong, honest, caring human being" who "excelled in studies and sports all through school and college, winning many merits and awards in the process."

Anjeli also finds him to be a "loving and committed husband and father to his two children" and states that "Both my children have grown up under his guidance and care, which I personally find of great value." She is convinced that, "if [Sanjay] could retract the action leading to this offence he would."

Gagan Arora, brother-in-law to Sanjay, has known him for 12 years and feels like Sanjay is "like an elder brother . . ." "Sanjay Gupta to me is a hard working, loving and a very caring person who succeeds in everything he puts his mind to…. [Sanjay] has a very happy family life with his wife and two children, who need him in their lives as he has raised his children especially his son who is handicapped and brought him up to be an upright young man. His son is very dependent on him in his day to day life and is extremely close to his father, he is also very close to his daughter who will soon be in college and will need his guidance and support."

Leo Fernandes, who has been friends with the Guptas since 1994, was once appointed to head the prestigious Taj Group of Hotels in Washington, DC, once overseeing four boutique hotels and 250 employees and now owns and operates a small business involved in Hotel Consulting and Asset Management. Mr. Fernandes' son has a hearing disability and "like Mr. Gupta's son Vaibhav attended the same school programs and support groups" for the deaf and hard of hearing.

Mr. Fernandes says that Sanjay "never hesitated to extend himself whenever his friends were in need." Mr. Fernandes has observed Sanjay "on many social occasions and witnessed his dedication and love for his family, always going out of his way to make sure their needs were met."

Mr. Fernandes has observed how this offense has hurt the Gupta family.  He writes, the "Gupta family is torn with grief and anguish. The two children are devastated and yet they stand strong and determined to stay together as a family and see this through as best they can. Their lives as young adults will always have a mark of sorrow and this is truly a huge burden on their youth."  However, Mr. Fernandes also states: "There is no doubt in my mind that [Sanjay] has learned from and regrets his mistake. I can see him using this experience to mentor and help others in similar situations and get on the right footing."

As the sole proprietor of Silver Cloud, Inc., a construction consultancy firm which has built schools for children in villages and remote areas of India, Mr. Mukul Vaid has known Sanjay for 39 years, "earlier as a fellow school and college mate and a good friend, and a few years later as a brother-in-law"  Mr. Vaid recounts the following story which speaks volume about Mr. Gupta's character:

"In one incident when we were traveling together, a young boy approached our car and begged for some money as a help, I saw [Sanjay] writing down something on the young boys hand, and whispering to him, later I found that he had asked the boy to send his father to him, for a job, not only that he helped the father with a job but also gave some money to put the boy to go to school which he continued doing for many years."

Mr. Vaid also believes that Sanjay "is extremely repentant, and has suffered emotional and physical breakdown due to the actions he committed leading to this offence, I for one, am absolutely sure that in future [Sanjay] would never be on the wrong side of law, as he has discussed his present situation with me extensively, and knowing his upbringing, and the values given to him when he was a young man in India, I do not have an iota of doubt that he would lead his future life as a model law abiding citizen…."

7

Mr. Gupta's children also recognize that this crime does not define their father.  Sanjay's daughter, Simrin states " [t]hough I'm disappointed that he's made such a grave mistake, I don't believe it accurately reflects his true persona. By nature, my father is neither deceitful nor dishonest. He is fair, generous and kindhearted – trains which I believe define him both as a loving father and a good Samaritan…I've personally experienced the extent of his warmth and don't believe that his crime was an act of selfishness or greed. My father is not sly or manipulative."

She recounts having seen her dad "labor for hours" on outdoor home projects and "would never accuse him of wanting to take the easy way out of a hard situation", referencing her father's telling her of "how he worked making pizzas and managing a 711 store."  Simrin has seen her father "become a much more introspective person" and she believes "that the pain, turmoil and regret [Sanjay] has endured in the aftermath of his offense is, in many ways, far worse than any punishment the court could prescribe."

Sanjay's son, Vaibhav, currently works at Housing Counseling Services, a nonprofit organization dedicated to serving low income residents of Washington, DC, Maryland and Virginia.  Vaibhav recounts the death of his great uncle, during which time Sanjay "helped organize every detail of the funeral and was constantly with my aged great aunt to comfort her. The family entrusted [Sanjay] with the task because everyone in our family knew, even though he was her nephew, and not her son, his reliability and his caring attitude meant that this trying time…would be much easier…she and her family never had to worry because my father was there."

Vaibhav believes that one thing, more than anything else, bears out his father's character. Having been born with rubella, Vaibhav suffered deafness and leg problems. Despite being surrounded by family and friends in India, his parents "against the advice of many…decided to move to America to start a new life…they gave up a safety net, a support structure, and many other things to start anew. My father was the heart and soul of all this…. We suffered bankruptcy once, lost our home, and had to restart everything. Throughout it all, my father held our family together and worked long days so I and my sister could have a future…. It took an uncommon courage and strength to do all this."

While Vaibhav does "not know why [Sanjay] did what he did", he says Sanjay "has struggled with his mistake, every day and night. Not only that, he has paid back those who were harmed by his actions in full and promptly. His own emotional struggle has been deep and vivid, showing that he has indeed 'served' his time."  Vaibhav believes his father has "undergone the 'dark night of the soul'…that shows that he has true remorse and regret…."

After reading these letters, it is apparent that Mr. Gupta's sincere remorse, caring personality and generous nature, all call for leniency in this case.

C.    *The Need to Avoid Unwarranted Sentence Disparities Among Defendants Who Have Been Found Guilty of Similar Offenses*

Pursuant to 18 U.S.C. § 3561, Mr. Gupta's offense of conviction is probation-eligible. Our research has shown that such a sentence would be within the range of sentences received by other defendants sentenced in the federal courts for similar offenses.  *See, e.g.,*

- in *United States v. Syed T. Shah*, Case No. 12-cr-00057-M-LDA (D.R.I)  U.S. District Court Judge John J. McConnell, Jr, sentenced the defendant to five years of probation and six months of home confinement after he pled guilty to defrauding the food stamp

program of approximately $648,000.  Shah received more than $324,000 personally. He used  the  proceeds to pay for his own personal expenses, including the cash purchase of a 2010 Mercedes S550V4 for $76,652. He was ordered to make restitution while on probation.   The prosecutor recommended a 27 month sentence.

- in *United States v. Ronald Wallace*, Case No. 2:04-cr-1376 CBM, U.S. District Judge Consuelo B. Marshall sentenced the defendant to probation-only.  Wallace pleaded guilty to two counts of mail fraud, four counts of wire fraud and one count of conducting an unlawful monetary transaction, all in connection with his running of a Ponzi scheme in which his customers collectively lost $13 million.  He was sentenced in February, 2007.  Under the advisory Guidelines, Wallace had faced seven years of imprisonment.   Wallace's health issues were an important factor in the court's sentencing decision;

- in *United States v. Bert Fingerhut*, Case No. 2:07-cr-413 PGS (D.N.J.), U.S. District Judge Peter G. Sheridan sentenced the defendant to two years in prison. Fingerhut, a former Wall Street investment banker and executive at Oppenheimer & Co., Inc., was convicted of conspiring to commit securities fraud in connection with initial offerings involving mutual banks.  Specifically, he was found guilty of establishing a plot to defraud the banks by secretly amassing and selling shares of bank stock that he was not entitled to sell, involving a loss amount of $11 million.  He was sentenced in August, 2007.

- in *United States v. Kalil Khalil*, Case No. 2:07-cr-20104 (E.D.Mich.), U.S. District Judge David Lawson sentenced the defendant five (5) years in prison.  Khalil pleaded guilty to wire fraud in connection with a 2.5 year scheme to defraud

mortgage lenders in which he prepared fraudulent loan applications and related documents, then wired the proceeds of those loans to an account he controlled in Detroit.   Khalil was ordered to pay $11.1 million loan in restitution.   He was sentenced in February, 2008.

- in *United States v. Andrew Yao*, Case No. 2:07-cr-301 PBT (E.D.Pa.), U.S. District Judge Petrese B. Tucker sentenced the defendant to five (5) years in prison. Yao pleaded guilty to a ten-count indictment which included charges of making false statements to a financial institution, mail and wire fraud, and engaging in an illegal monetary transaction in connection with a scheme in which he had fraudulent tax returns prepared for himself and for a company he owned; and for obtaining personal and business loans totaling over $40 million.   As part of his sentence, Yao was ordered to pay more than $12.5 million in restitution.   He was sentenced in February, 2009.

- in *United States v. Whitehead*, 559 F.3d 918 (9th Cir. 2009), the defendant, Thomas Whitehead, "pirated a million dollars worth of "access cards" and sold them to persons who used them to steal DirectTV's television services."   Mr. Whitehead earned more than $400,000 from this illegal scheme.   Upon pleading guilty, his guideline range was calculated by the district court and was 41-51 months.   After taking into consideration several arguments by Mr. Whitehead to lower the offense level, his remorse, his family circumstances, and the fact that the case was a non-violent crime, the district court sentenced the defendant to five years of probation, 1000 hours of community services, and restitution in the amount of $50,000.

11

The facts here likewise warrant significant consideration in the form of a variance.  Mr. Gupta's lack of a prior criminal record, the isolated and aberrant nature of his criminal conduct, his swift acceptance of a pre-indictment guilty plea that spared the government the need to seek an indictment and prepare for trial, and his full repayment of the funds he improperly accepted, we submit, place him on a par with these defendants who have received probationary sentences for crimes involving fraud or theft.  We therefore ask the Court to afford Mr. Gupta the opportunity to prove his commitment to rehabilitation during a period of probation and home confinement that permits Mr. Gupta, during his period of punishment, also to seek employment and provide for his family.

### *Post-Sentencing Rehabilitation and Extraordinary Acceptance of Responsibility*

The Supreme Court has held, in the context of a defendant being resentenced after an appellate court remand, that a district court "may consider evidence of the defendant's postsentencing rehabilitation." *Pepper v. United States*, 131 S. Ct. 1229, 1236 (2011).  It therefore goes without saying that a district court may also consider extraordinary efforts at post-offense rehabilitation.  *Id*.  We respectfully submit that Mr. Gupta's extraordinary efforts at making full restitution – a rarity in like cases --  should be given considerable weight.

In addition, although we accept and do not dispute the advisory guideline range as calculated, there is a body of case law that developed under the guidelines where judges sometimes departed in instances where defendants exhibited extraordinary acceptance of responsibility or showed extreme remorse.  *See. United States v. Blakburn*,105 F.Supp. 2d 1067 (D.S.D. 2000)(court granted downward departure to insure that restitution was made and place defendant on longer period of supervision in failure to pay child support case where guidelines called for 12-18 month prison term);  *United States v. Miller*, 991 F.2d 552 (9th Cir.

1993)(voluntary restitution exhibiting extraordinary acceptance of responsibility can justify downward departure); *United States v. Davis*, 797 F. Supp 762 (D.C.N. Ind.. 1992)(8-level departure granted where defendant made voluntary restitution of $750,000).  *See also United States v. Fagan*, 162 F.3d 1280, 1284-85)(10th Cir. 1998)(departure for extreme remorse "permissible factor" for departure if it is present to some exceptional degree);  *United States v. Jaroszenko*, 92 F.3d 486 (7th Cir.  1996).   We respectfully submit that the Court can consider this case law and Mr. Gupta's restitution payment as a factor under 3553.

>    D.    *The Purposes of Federal Sentencing*

As noted above, Congress has identified four purposes of federal sentencing that must guide district courts in selecting a sentence within the statutory penalty range.  The sentence must be "sufficient, but not greater than necessary" to serve those purposes.  With these guideposts in mind, Mr. Gupta respectfully asks the Court to apply a downward variance from the advisory Guidelines range and sentence him to a period of probation conditioned upon home confinement.

The first purpose of federal sentencing is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  From this day forward, Mr. Gupta will stand convicted of a serious federal offense that will disqualify him from many other jobs.  Mr. Gupta is ashamed of the situation he has brought upon himself, and he is mortified that he finds himself, at age 55 and with a family to support, facing a federal criminal sentencing.  In deciding the type of sentence that will provide "just punishment" for Mr. Gupta's offense, the Court should consider that the offense was uncharacteristic of Mr. Gupta's otherwise law abiding history.   Gupta has and will continue to experience as a result of his convictions.

The second purpose of federal sentencing is "to afford adequate deterrence to criminal conduct."   This goal would be fully served by a sentence of probation and a year of home confinement.   Mr. Gupta's guilty plea has received press coverage that conveys to the public the serious consequences of his conduct.   Many of the individuals with whom Mr. Gupta worked with at Air India have no doubt taken notice of his guilty plea.   A strong message of deterrence has been sent to the public and has certainly been received by Mr. Gupta.   Mr. Gupta is as deterred from future criminal activity as any individual could be.

The Supreme Court recognized in *Gall v. United States*, 552 U.S. 38, 48-49; 128 S.Ct. 586 595-56 (2007),  that although custodial sentences are more severe than probationary sentences,

> [o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. App. 109.

The proposed sentence here is even more stringent than a straight probationary sentence. A sentence of one year of home incarceration will significantly restrain Mr. Gupta's liberty for a lengthy period.  It will send a  send a strict message of deterrence and is a significant form of punishment for Mr. Gupta given the unique circumstances presented here.  In addition, Mr. Gupta is willing to work many hours of community service.

14

The third purpose of federal sentencing is "to protect the public from further crimes of the defendant." Mr. Gupta is being sentenced for a crime for the first time in his life. He has had no previous contact with the criminal justice system at all. The absence of a criminal history is a valid reason for finding that the purposes of sentencing will be adequately served by a sentence below the advisory Guidelines range. *See, e.g., United States v. Huckins*, 529 F.3d 1312, 1318-19 (10th Cir. 2008) (a district court "may weigh a defendant's lack of a criminal record" in deciding whether to grant a downward variance from the advisory Guidelines range "even when the defendant has been placed into a criminal history category of I"). Mr. Gupta also has a lifelong history of working hard and providing for his family. He presents no danger of recidivism.

The fourth purpose of federal sentencing is to "provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner." Mr. Gupta is 55 years old, has recently had a stroke, and suffers from a myriad of health conditions. He has been diagnosed with Type II diabetes, hypertension and high cholesterol, all conditions which will inevitably shorten his life expectancy. In addition, Mr. Gupta has suffered from gout and has sleep apnea, needing to utilize continuous positive airway pressure ventilation to aid in his sleeping. More recently, while traveling in India to visit him family, Mr. Gupta suffered a stroke and partial temporary paralysis following a period of prolonged high blood pressure. To say the least, Mr. Gupta's health issues are complicated and best treated outside the federal prison system.

In sum, Mr. Gupta implores the Court to exercise leniency and impose a sentence of probation and one-year sentence of home confinement that will allow him to try to rebuild his life. Mr. Gupta recognizes the wrongfulness of his criminal conduct, and he acted swiftly to

accept full responsibility and make amends.  His lack of a prior criminal record, demonstrated work ethic, and the many ways in which he already has been punished for his crime are compelling evidence that leniency in this case is fully consistent with the Court's statutory mandate to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of federal sentencing.

**CONCLUSION**

**WHEREFORE** based on the foregoing reasons and any others that may appear to the Court, defendant Sanjay Gupta respectfully submits that a sentence of probation and home incarceration is sufficient, but not greater than necessary, to comply with the purposes of federal sentencing set forth in 18 U.S.C. § 3553(a).

Date:  September 25, 2012                               Respectfully submitted,

                                                          /s/ Danny C. Onorato
                                                          Danny C. Onorato (DC Bar #480043)
                                                          Schertler & Onorato, LLP
                                                          575 7th Street, NW
                                                          Suite 300 South
                                                          Washington, DC 20004
                                                          Telephone:  (202) 628-4199
                                                          Facsimile:  (202) 628-4177
                                                          donorato@schertlerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of September, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Sherri Lynn Schornstein, Esquire
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530

/s/ Danny C. Onorato
Danny C. Onorato